IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

DANIEL ZACHARY HARPER,

        Plaintiff,

        v.

JEFF PREMO, Superintendent OSP;
CORPORAL POLK, OSP Security;
C. PARKER, OSP Security; C. LENOX, OSP
Support Staff; S. DARR, OSP Security;
P. PATTERSON, OSP Security; JOHN DOE,
ICH Legal Officer, individually and in their
official capacities,

        Defendants.

6:13-cv-00097-MO

OPINION AND ORDER

MOSMAN, J.,

    Plaintiff Daniel Harper filed this lawsuit pro se under 42 U.S.C. § 1983. (Compl. [2].) He alleges that while housed at the Oregon State Penitentiary ("OSP"), numerous prison officials (collectively, "the Defendants") violated his constitutional rights as secured by the Eighth and Fourteenth Amendments. In his first claim for relief, Mr. Harper alleges that Defendants violated his Fourteenth Amendment right of access to the courts when he was denied access to

1 – OPINION AND ORDER

his legal materials for twenty-three days, following his transfer to OSP from a different prison on February 2, 2011. *Id.* ¶ 20. Mr. Harper contends that his inability to access his legal materials prevented him from raising eight assignments of error in his direct appeal proceedings, and consequently he is procedurally barred from pursuing those claims in post-conviction relief. *Id.* ¶¶ 20–22. In his second claim for relief, Mr. Harper alleges that he was subjected to cruel and unusual punishment when two correctional officers, knowing he was suicidal, moved him into an unmonitored cell and ridiculed him. This incident allegedly contributed to Mr. Harper's alleged attempt to commit suicide by biting his wrist on February 13, 2011. *Id.* ¶ 23. Finally, in his third claim for relief Mr. Harper alleges that he was subjected to cruel and unusual punishment when the Defendants failed to dispense his prescribed fluoxetine from February 2 to February 13, 2011. *Id.* ¶ 24. Mr. Harper alleges that he became suicidal due to withdrawals from the antidepressant. *Id.* ¶ 24.

I GRANTED summary judgment for Defendants on all claims, concluding that the summary judgment record showed no genuine dispute of material fact as to any of the three claims. Mr. Harper now moves for reconsideration [93] under Federal Rule of Civil Procedure 59(e).[1] Plaintiff's motion for reconsideration [93] is GRANTED as to the second claim for relief and DENIED as to the first and third claims.

## LEGAL STANDARDS

Reconsideration of judgment is within the discretion of the District Court. *School Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993). Typically, reconsideration is appropriate where (1) the court is presented with newly discovered evidence;

---

[1] The motion for reconsideration invokes Rule 59(e) and was timely filed under that rule. Contrary to Defendants' assertion, *see* Def.'s Resp. [103] at 2, it is not subject to the requirement of "extraordinary circumstances" applicable to a motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(6).

(2) the court committed clear error or "made an initial decision that was manifestly unjust"; or

(3) there has been an intervening change in controlling law. *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001); *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 n.5 (9th Cir. 1989).

## DISCUSSION

### I.  Reconsideration

When seized of a motion for reconsideration, the court "must strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993).  I attribute Plaintiff's failure to submit sufficient admissible evidence in opposition to Defendants' motion for summary judgment to his pro se status and misunderstanding of his burden of production.  Although it may be obvious to counsel and the Court that a plaintiff may support his allegations with his own sworn affidavit, without need for deposition transcripts, this would not be obvious to a pro se litigant.  This court is to "construe liberally the filings and motions of a pro se inmate in a civil suit," recognizing that prisoners face obstacles such as "limited access to legal materials and to sources of proof." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (internal quotation omitted).  Mr. Harper explains that he did not have access to the deposition transcript he has now submitted until he sought it from Defendants after I granted summary judgment.  Mr. Harper has also now submitted three declarations, albeit unsworn, supporting the allegations in his complaint.  (Decl. Harper [94]; Decl. Harper [95]; Harper Decl. in Rebuttal [104].)

There is no indication that Defendants will be prejudiced by reconsideration.  Mr. Harper's motion was promptly filed within the time allotted for motions to amend the judgment

3 – OPINION AND ORDER

under Rule 59(e), and Defendants do not argue that they have relied on the finality of the judgment in any way.  In a case such as this, I find that society's interest in the finality of judgments, although weighty, is outweighed by the need to render a just decision on the merits.  I have therefore considered whether the newly submitted evidence changes my conclusion at summary judgment that Defendants are entitled to judgment as a matter of law on all claims.  As to one of Mr. Harper's claims, I find that it does change the conclusion, and I therefore VACATE the final judgment of dismissal and DENY summary judgment to Defendants on Mr. Harper's second claim for relief.

## II.     Mr. Harper's Claims

Although I have considered the newly submitted evidence in support of Mr. Harper's claim for violation of his First and Fourteenth Amendment right of access to the courts, I DENY the motion for reconsideration [93] as to that claim because there remains no genuine dispute of material fact.  The record still fails to show that any delay in furnishing legal materials was the proximate cause of Mr. Harper's failure to timely file a *Church v. Gladden* motion[2] or to otherwise raise the assignments of error he alleges may have been waived in his direct appeal.  *See Arnold v. Intern'l Business Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981) (holding that a § 1983 plaintiff must show that the defendant's conduct was the proximate cause of his injury).  Several of Mr. Harper's written requests for his legal materials referenced his appellate counsel.  Corrections officers are (typically) not attorneys familiar with the nuances of Oregon criminal appellate procedure, and there is no evidence they are expected to anticipate inmates' every possible desire to file pro se motions, particularly when the inmate in question is

---

[2] In his deposition and declaration, Mr. Harper testifies that he had been preparing a pro se notice to the court hearing his direct appeal under *Church v. Gladden*, 417 P.2d 993, 244 Or. 308 (1966), and that the delays in obtaining his legal materials prevented him from timely filing this motion with the court.  (Deposition [104-1] at 52:3–16, 53:11–54:10; Harper Decl. [95] ¶ 1.)

4 – OPINION AND ORDER

represented.  On the record before me, it would not be foreseeable to Defendants that Mr. Harper planned to file a pro se *Church v. Gladden* motion or that all of his legal materials were necessary for him to protect his rights in this way.  (As I explained at summary judgment, any failure by counsel to raise the eight assignments of error cannot be attributed to Defendants here. (*See* Op. & Order [90] at 16 n.14.))

I turn now to Mr. Harper's claim for violation of the Eighth Amendment based on Defendants Polk and Patterson's conduct on February 13, 2011.  I granted summary judgment for Defendants because Mr. Harper had submitted no evidence beyond his allegations that Defendants Polk and Patterson actually antagonized or mocked him after he expressed thoughts of suicide that day.  (Op. & Order [90] at 17 (explaining that "the issue is not whether alleged harsh conditions of confinement were a part of Mr. Harper's penalty," but "whether those conditions occurred at all").)  Now before the court is admissible evidence contradicting Defendants Polk and Patterson's denials, such that Mr. Harper has shown a dispute of fact as to whether Defendants Polk and Patterson antagonized him after he reported thoughts of suicide. The claim involves squarely conflicting testimony and no other evidence to show whether or not the antagonism occurred, and a reasonable juror could believe Mr. Harper's version of the events and disbelieve Defendants' denials.  Taking the evidence in the light most favorable to the non-moving party, as I must, I conclude that a rational jury could find that the events underlying Mr. Harper's second claim did occur.

The burden is on the party seeking summary judgment to show that there is no genuine dispute of material fact such that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Defendants have not carried this burden.  They made no argument or showing that Mr. Harper's allegations, if proved, would not

make out a violation of a clearly established Constitutional right.  As noted previously, *see* Op. & Order [90] at 9, Defendants did not even argue that they were entitled to qualified immunity for any of the actions alleged.  More importantly, they did not argue that the facts alleged and now supported by evidence—placing an inmate who has said he is suicidal in an unmonitored cell, mocking him with such as words as "How are you going to do it? Don't make a mess on my shift"—and then laughing at him from the adjoining office—would not violate Mr. Harper's Eighth Amendment right to be free from cruel and unusual punishment.  Confronted now with a dispute of fact and no showing from Defendants that this dispute is immaterial, I DENY summary judgment to Defendants on Mr. Harper's second claim.[3]

I do not, however, find a genuine dispute of material fact as to whether Mr. Harper's having been issued a misconduct report by Defendant Polk constitutes cruel and unusual punishment.  Mr. Harper's newly submitted evidence does not contradict the evidence that this report was standard procedure, issued because Mr. Harper refused to "cell in."  (Polk Decl. [63] ¶¶ 4–5.)  Therefore, even in light of the newly submitted evidence Defendants are entitled to judgment as a matter of law insofar as a claim for cruel and unusual punishment from this incident is alleged.

Finally, Plaintiff's newly submitted evidence does not create a genuine dispute of material fact on his third claim for relief.  Although Mr. Harper has submitted additional evidence showing that the sudden cessation of fluoxetine can sometimes cause the alleged side effects, there remains no evidence in the record that any Defendant was deliberately indifferent to Mr. Harper's medical needs.  The new evidence does not show that any Defendant knew "of

---

[3] I make no holding as to whether the facts established on the record today actually establish a violation of Mr. Harper's eighth amendment rights or whether Defendants would nevertheless be entitled to qualified immunity. With no showing from Defendants on these questions, I find that summary judgment for Defendants is inappropriate.

facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and actually "dr[e]w the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

## CONCLUSION

Plaintiff's motion for reconsideration [93] is GRANTED in part and DENIED in part. I DENY Defendants' motion for summary judgment as to Plaintiff's second claim for relief. As to all other claims, my March 28, 2014, Opinion and Order [90] remains in place. The final Judgment [91] is VACATED and the second claim for relief is to proceed to trial.

IT IS SO ORDERED.

DATED this __4th__ day of August, 2014.

    /s/Michael W. Mosman  
    MICHAEL W. MOSMAN  
    United States District Judge